IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

JANICE SHARITA JAMISON,        *
                               *
        Plaintiff,             *
                               *
        v.                     *           CV 117-153
                               *
FORCES UNITED f/k/a AUGUSTA    *
WARRIOR PROJECT, INC.,         *
                               *
        Defendant.             *

---

**O R D E R**

---

Before the Court is Defendant's motion for summary judgment.
(Doc. 40.)  The Clerk of Court gave Plaintiff notice of the motion
for summary judgment and informed Plaintiff of the summary judgment
rules, the right to file affidavits or other materials in
opposition, and the consequences of default.  (Doc. 42.)  Thus,
the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822,
825 (11th Cir. 1985) (per curiam), are satisfied.  The time for
filing materials in opposition has expired, and the motion is ripe
for consideration.[1]

---

[1] In her response to Defendant's motion for summary judgment, Plaintiff fails
to cite to evidence in the record as required by Local Rule 7.1(b).  Although
the Court need not consider statements in her motion or briefs absent citations
to the record, the Court considers Plaintiff's arguments as best it can but
notes Plaintiff offers little to refute the facts as laid out by Defendant.
Furthermore, Plaintiff failed to respond to Defendant's statement of undisputed
material facts as required by Local Rule 56.1.  Thus, all material facts offered
by Defendant in its statement of material facts (Def.'s St. of Mat. Facts, Doc.
40-2) are deemed admitted.  <u>See</u> LR 56.1, SDGa ("All material facts set forth in
the statement required to be served by the moving party will be deemed to be
admitted unless controverted by a statement served by the opposing party.").

## I. BACKGROUND

Plaintiff Janice Jamison, proceeding *pro* se, is an African American. (Pl.'s Dep., Doc. 40-3, at 96:14—16.)

### A. Plaintiff Begins Employment with AWP

Plaintiff worked with Defendant Augusta Warrior Project, Inc. ("AWP") from June of 2013[2] to December 28, 2015.[3] (Pl.'s Dep., at 52:17-19, 190:21-22.) Several months after Plaintiff started working for AWP, Kim Elle became AWP's new President and CEO. (Id. at 66:22-67:4; Kim Elle's Aff., Doc. 40-5, at 1.) Plaintiff worked in the community relations department and reported directly to Ms. Elle. (Pl.'s Dep., at 73:24-74:1, 74:5-7.) Plaintiff and Ms. Elle were the only employees working at AWP's headquarters until Spring of 2015. (Id. at 83:4-5, 9-12; 97:1-3.)

### B. AWP Expands

In the Spring of 2015, AWP hired Amy Palowitch as Director of Operations and Jill Schepp as Director of Marketing and Development; both women joined Plaintiff and Ms. Elle working at headquarters. (Id. at 97:24-98:2, 101:5-14, 105:18-20; Amy Palowitch's Aff., Doc. 40-8, ¶ 1; Jill Schepp's Aff., Doc. 40-9,

---

[2] Plaintiff was a temporary contract employee through the AmeriCorps VISTA program from June of 2013 to December 30, 2013, when Plaintiff became a full-time, salaried employee of AWP. (See Offer Letter, Doc. 40-6; Pl.'s Dep., at 52:19-20, 56:2.)

[3] Effective August 31, 2018, AWP changed its name to Forces United, Inc. (Def.'s Br. Supp. Mot. for Summ. J., Doc. 40-1, at 2 n.1 (The Court uses the presumed correct spelling of Defendant Forces United, Inc. as found in Defendant's Answer (Doc. 33).).) "The organization's name was [AWP] at all times during Plaintiff's employment." Id.

at 1.) Ms. Elle gave Plaintiff the opportunity to choose whether to continue in her same role and report directly to Ms. Schepp or transition to the operations department and report directly to Ms. Palowitch. (Pl.'s Dep., at 105:20-21.) Plaintiff chose to stay in the marketing and development department and report to Ms. Schepp. (Id. at 107:3-8; Jill Schepp's Aff., at 1.)

## C. Performance Issues

Under Ms. Schepp, there is evidence that Plaintiff began exhibiting performance issues, including unprofessional behavior and absenteeism.[4] There are two instances where Plaintiff failed to respond to third parties. First, in April of 2015, an interested volunteer made multiple attempts to contact Plaintiff, but Plaintiff failed to respond for two weeks forcing the interested volunteer to contact another employee. (Emails Regarding Interested Volunteer, Doc. 40-12.) Ms. Elle received a forwarded email exchange about this situation. (Id. at 1.) Second, in the Fall of 2015, Citizens of Georgia Power wished to donate $101,000 to AWP but "was close to moving on to another charity" after reaching out to Plaintiff "on several occasions

---

[4] Defendant offers statements from some of Plaintiff's coworkers expressing grievances about Plaintiff. (See Def.'s Br. Supp. Mot. for Summ. J., at 9-10.) The Court, however, focuses only on evidence of performance issues of which Ms. Elle, Ms. Palowitch, or Ms. Schepp were aware. In doing this, the Court does not decide whether Ms. Palowitch and Ms. Schepp were decision makers. It is clear, however, that Ms. Elle made the ultimate decision to terminate Plaintiff and, therefore, was a decision maker. (Id. at 14 ("Elle made the decision to terminate [Plaintiff] for failure to perform her required job duties."); Pl.'s Resp. Opp'n Def.'s Mot. for Summ. J., Doc. 43-1, at 4 ("Plaintiff was terminated under the direction of Kim Elle.").)

over a [two- to three-]week span and never hear[ing] back from her." (Citizens of GA Power Email, Doc. 40-13.) As a final effort, Citizens of Georgia Power contacted Ms. Elle who helped the organization with the charity event. (Id.)

There are other instances where Ms. Palowitch, Ms. Schepp, and Ms. Elle noted performance and tardiness issues with Plaintiff prior to November 2015 — when meetings began discussing work tensions and performance issues. On October 8, 2015, Ms. Elle emailed Plaintiff, copying Ms. Palowitch, asking whether Plaintiff had completed a specific task assigned the previous morning. (Oct. 8, 2015 Email with Pl.'s Resp., Doc. 40-10, at 1.) Ms. Palowitch responded to Ms. Elle complaining about working with Plaintiff. (Oct. 8, 2015 Email with Amy Palowitch's Resp., Doc. 40-11, at 1.) Specifically, after explaining all she did to make it easier for Plaintiff to complete the task, Ms. Palowitch states, "From my experience, [Plaintiff] usually gets around to things when she feels like it and she doesn't provide updates or status checks. This is one of the things about [Plaintiff] that is very time consuming for whoever works with her." (Id.)

Ms. Schepp, Plaintiff's direct supervisor, complained that Plaintiff "was frequently tardy, often left work early, or was absent altogether." (Jill Schepp's Aff., at 1.) Ms. Schepp recounted an incident on June 5, 2015, where Plaintiff was scheduled to work at a fundraising event but left early without

4

permission or notifying Ms. Schepp. (Id. at 2.) On July 21, 2015, Ms. Schepp signed a statement that Plaintiff was late to work that day without calling. (July 21, 2015 St. by Jill Schepp, Doc. 40-18.)

**D. November 9, 2015 Meeting**

On or around November 6, 2015, Ms. Palowitch felt that Plaintiff passed off her own tasks onto Ms. Palowitch. Ms. Palowitch and Plaintiff had a text conversation where Ms. Palowitch stated, "I am so mad at you right now I can not speak to you. I will be addressing this BS on Monday." (Text Messages, Doc. 40-22, at 1.) Plaintiff, Ms. Palowitch, and Ms. Elle held a meeting on Monday, November 9, 2015, to discuss the issue. This meeting is important because, according to Plaintiff, it is the first time she complained about race discrimination.

Plaintiff admits that Ms. Palowitch did not state anything about race in their text exchange, which was "just a work dispute." (Pl.'s Dep., at 133:1-11.) Plaintiff states, however, "It became . . . a racial issue when we got in the meeting." (Id. at 133:13-14.) During the meeting, Plaintiff told Ms. Elle:

> [I]f I would have interacted with Amy, who is a white woman, the way she's doing with me, the way she did with me over the phone, the way she did with me through text messages, through voicemails and the way she was carrying on in this office right now, I would be immediately fired. I'm not given — I would not have been given the same latitude to act out like that.

(Id. at 165:2-9.) Apart from this single claim that Ms. Elle treated a white employee better than she would have treated Plaintiff, Plaintiff repeatedly claims that Ms. Palowitch and Ms. Schepp treated her differently because they "had become very good friends" and were "push[ing] [her] out." (Id. at 144:6-25.) Plaintiff also believes she "started getting shut out" when she began questioning whether AWP was misusing finances. (See id. at 166:23-167:1, 167:16-168:7.)

## E. December Absences

In December, Plaintiff had unapproved tardies and absences culminating in her termination on December 28, 2015. Ms. Elle stated that on December 3, 2015, Plaintiff "reported to work late without notifying her supervisor of her tardiness." (Kim Elle's Aff., at 1.) On December 16, 2015, Plaintiff informed Ms. Elle that she would "be in the office with the exception of the holidays." (Emails Regarding Plaintiff's EOY Schedule, Doc. 40-20, at 1.) Plaintiff, however, was then absent without permission at least part of the day on December 18, 22, and 23, 2015. (Id.; Kim Elle's Aff., at 1-2; Dec. 22, 2015 Email from Amy Palowitch, Doc. 40-19.) Regarding the December 22nd absence, Ms. Palowitch emailed Ms. Elle that Plaintiff left around noon without letting anyone know where she was going. (Emails Regarding Plaintiff's EOY Schedule, at 1; Dec. 22, 2015 Email from Amy Palowitch.) In her deposition, Plaintiff states she "had to go meet with someone

about [a fundraising] drive" and that her schedule was on the shared Microsoft Outlook calendar. (Pl.'s Dep., at 189:6-13, 189:19-190:8.) The calendar has not been provided to the Court.

## F. December 21, 2015 Meeting

Plaintiff called a meeting with Ms. Schepp on December 21, 2015, to discuss work tensions because "the situation had not improved" since the November 9, 2015 meeting. (Id. at 184:23-185:2; 186:3-13.) Ms. Schepp stated that Plaintiff rudely and loudly requested the meeting in the hall and then "began yelling at [her]." (Jill Schepp's Aff., at 2.) Plaintiff denies raising her voice. (Pl.'s Dep., at 188:24-189:1.) Plaintiff told Ms. Schepp, "I feel like . . . I'm being treated like a slave. . . . I'm getting all of the . . . work dumped on me and then y'all are taking all of the credit for it. And . . . leaving me out of meetings and things like that." (Id. at 187:5-11.) In her deposition, Plaintiff states she thought she was treated unfairly because she was black. (Id. at 187:12-15.) It is unclear, however, whether Plaintiff told Ms. Schepp she thought her differential treatment was because of her race. (See id. at 186:17-187:15.)

## G. December 28, 2015 Termination

Ms. Elle made the decision to terminate Plaintiff on December 28, 2015, "as a result of her poor performance." (Kim Elle's Aff., at 3.) Ms. Palowitch and Wright McLeod, an attorney and AWP board

member, told Plaintiff about her termination. (Pl.'s Dep., at 190:23-191:2, 195:8-9.) Plaintiff asked the reason for her termination and Wright McLeod responded that Plaintiff "would find out at a later date." (Id. at 192:13-16.) Wright McLeod asked Plaintiff whether they could inspect her backpack and purse to make sure she was not in possession of company property. (Id. at 194:23-24.) A tense exchange ensued, and the police were called. (Id. at 194:24-196:12.)

## H. Post-Termination Events

Plaintiff focuses her opposition to Defendant's motion for summary judgment on events occurring after her termination. Plaintiff pressed charges against Wright McLeod and Ms. Palowitch. (Criminal Warrant Appl., Doc. 43-1, Ex. 3, at 27-30.) In an apparent attempt to protect his name after Plaintiff filed the criminal warrant against him, Wright McLeod released a press statement that Plaintiff was terminated for stealing confidential veteran information. (Wright McLeod Media Release, Doc. 43-1, Ex. 9, at 45.) There is no evidence, however, that Ms. Elle, Ms. Palowitch, or Ms. Schepp ever told Plaintiff or anyone else Plaintiff was terminated for stealing veteran information.

Plaintiff also initiated a case with the Georgia Department of Labor ("DOL") to receive unemployment benefits. (See generally, Georgia DOL Proceedings, Doc. 43-1, Exs. 11a-e, at 51-64.) Because the Court finds Plaintiff's disparate treatment and retaliation

claims fail as a matter of law at the prima facie stage, neither the criminal case nor unemployment benefit case has any bearing on the outcome of this matter. As such, the Court declines to expand further on either proceeding.

## I. EEOC Case and Present Posture

On August 26, 2016, Plaintiff filed an EEOC Charge alleging race discrimination and retaliation. (EEOC Charge, Doc. 40-24.) Plaintiff filed this action on November 14, 2017. (Compl., Doc. 1.) On June 15, 2018, the Court found Plaintiff's claims were not barred for failure to exhaust administrative remedies and dismissed Kim Elle as a defendant because Ms. Elle cannot be held liable in her individual capacity under Title VII. (Order on Mot. to Dismiss, Doc. 21, at 7.) On April 5, 2019, Defendant filed the present motion for summary judgment. (Doc. 40.) Plaintiff responded (Doc. 43-1) and Defendant replied (Doc. 45).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs.,

Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-movant's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255. But "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. Id. at 252; accord Gilliard v. Ga. Dep't of Corr., 500 F. App'x 860, 863 (11th Cir. 2012).

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 322-23. When the movant does not bear the burden of proof at trial, it may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991)

(citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 153, 157, 160 (1970); Celotex Corp., 477 U.S. at 320, 322-25).

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that "was 'overlooked or ignored' by the moving party" or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17 (quoting Celotex, 477 U.S. at 332 (Brennan, J., dissenting)). The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56. In reaching its conclusions

11

herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in this case.

## III. DISCUSSION

Plaintiff brings claims of (A) disparate treatment and (B) retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* based on her termination. The Court addresses each claim in turn.

### A. Discrimination

#### 1. Standard

Title VII establishes that "[i]t shall be an unlawful employment practice for an employer — (1) . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). A plaintiff may establish a discrimination claim under Title VII using direct or circumstantial evidence. Schoenfeld v. Babbitt, 168 F.3d 1257, 1266-67 (11th Cir. 1999). "Direct evidence of discrimination is evidence, that, 'if believed, proves the existence of a fact in issue without inference or presumption.'" Id. at 1266 (quoting Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997)). "'[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some

impermissible factor" qualify as direct evidence. Id. (quoting Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989)).

Here, Plaintiff does not argue anyone made blatant discriminatory remarks constituting direct evidence of race discrimination. On its own review, the Court also finds no direct evidence. Thus, Plaintiff's case relies solely on circumstantial evidence. When a plaintiff relies solely on circumstantial evidence to support her claim, courts employ the burden shifting framework set forth in McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802-04 (1973).

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of a Title VII violation. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). A plaintiff makes a prima facie case of race discrimination by showing by a preponderance of the evidence that she (1) "is a member of a protected racial class," (2) "was qualified for the position," (3) "experienced an adverse employment action," and (4) "was replaced by someone outside of [her] protected class or received less favorable treatment than a similarly situated person outside of [her] protected class." Flowers v. Troup Cty. Sch. Dist., 803 F.3d 1327, 1336 (11th Cir. 2015). "The burden of proving a prima facie case is not onerous." Watson v. Fort Worth Bank & Tr., 487 U.S. 977, 986 (1988) (citation and internal quotation marks omitted). Success in establishing a prima facie case creates a

rebuttable presumption that the employer acted illegally. See McDonnell Douglas, 411 U.S. at 802. "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [termination]." Id. The employer's burden is an "exceedingly light" one of production, not persuasion, which means the employer "need only produce evidence that could allow a rational fact finder to conclude that [the plaintiff's] discharge was not made for a discriminatory reason." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998); Meeks v. Comput. Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994). If the employer meets this burden, the burden shifts back to the plaintiff who can only avoid summary judgment by presenting "significantly probative" evidence that the proffered reasons are pretextual. Young v. Gen. Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988) (quoting Anderson, 477 U.S. at 249-50).

## 2. Prima Facie Case

The Court assumes Plaintiff meets the first three prongs of her prima facie case. The remaining issue is whether there is evidence in the record showing by a preponderance of the evidence that similarly situated comparators were treated more favorably than Plaintiff by the same decision makers.[5] Comparator evidence is the most common mechanism for satisfying the "similarly

---

[5] There is no evidence on who, if anyone, replaced Plaintiff.

situated" requirement. See Lewis v. City of Union City, 918 F.3d 1213, 1217 (11th Cir. 2019) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258-59 (1981)) ("similarly situated" means a "comparator"). To be an adequate comparator, the employees must be "similarly situated in all material respects." Id. at 1224. The comparator analysis allows the Court to grant summary judgment when the evidence does not "permit a valid inference that invidious discrimination is afoot." Id. at 1229.

Plaintiff's only comparator evidence is that two white women, Katherine Hyer and Christine McLeod, were both "given the option to either resign or be terminated and receive unemployment benefits" and "[n]either of these two individual's personal belongings were searched upon termination/resignation." (Pl.'s Resp. Opp'n Def.'s Mot. for Summ. J., at 5.) Other than her own statements, Plaintiff offers no evidence supporting her assertion that these two women were treated differently.[6] More importantly, however, there is no evidence in the record showing that Ms. Hyer and Ms. McLeod were similarly situated to Plaintiff in all material respects.

In the disciplinary context, the relevant inquiry is "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Hill v. SunTrust

---

[6] The Court need not decide whether the differential treatment Plaintiff states Ms. Hyer and Ms. McLeod received qualifies as more favorable treatment.

Bank, 720 F. App'x 602, 606 (11th Cir. 2018) (citation omitted). There must be enough evidence in the record for a reasonable juror to find by a preponderance of the evidence that Ms. Hyer and Ms. Mcleod "engaged in the same basic conduct (or misconduct) as [Plaintiff]." Lewis, 918 F.3d at 1227. Here, the performance issues Plaintiff engaged in included unexcused absences and tardies and unprofessional behavior. Thus, there must be evidence in the record showing that the alleged comparators engaged in the same basic conduct.

Defendant points to the absence of evidence showing Ms. Hyer or Ms. McLeod "exhibited any performance issues at all, much less in the same quantity as [Plaintiff]." (Def.'s Reply Supp. Def.'s Mot. for Summ. J., Doc. 45, at 6.) Plaintiff fails to offer any evidence to the Court showing that Ms. Hyer and Ms. McLeod exhibited any performance issues. The only mention of either termination is found in Plaintiff's deposition where she states she thinks Ms. McLeod was terminated because "she wasn't very good at foreseeing what [Ms. Elle] needed." (Pl.'s Dep., at 101:16–24.) Without evidence showing Ms. Hyer and Ms. McLeod engaged in similar conduct or misconduct as Plaintiff, the Court finds Ms. Hyer and Ms. McLeod cannot be Plaintiff's comparators. As such,

Plaintiff's disparate treatment claim fails at the prima facie stage.[7]

In addition, by failing to submit opposition to Defendant's statement of undisputed material facts, as required by the Local Rules, Plaintiff has admitted that "[b]ased on her consistent performance issues over a prolonged period of time, [Ms.] Elle made the decision to terminate [Plaintiff] for failure to perform her required job duties." (Def.'s St. of Mat. Facts, ¶ 81; see also Diaz v. Kaplan Univ., No. 08-60368-CIV, 2009 WL 7226980, at *7 (July 1, 2009), aff'd, 394 F. App'x 631 (11th Cir. 2010). Thus, Plaintiff admits that she was terminated not because of her race but her performance issues. The Court ends its disparate treatment analysis at the prima facie stage and grants Defendant's motion for summary judgment as to Plaintiff's disparate treatment claim.

## B. Retaliation

### 1. Standard

The McDonnell Douglas burden-shifting analysis also applies to retaliation claims that depend on circumstantial evidence, requiring a plaintiff to establish a prima facie case. Knott v. DeKalb Cty. Sch. Sys., 624 F. App'x 996, 997 (11th Cir. 2015) (citing Bryant v. Jones, 575 F.3d 1281, 1307 (11th Cir. 2009)). To establish a prima facie case of retaliation, a plaintiff must

---

[7] There is also insufficient evidence in the record to establish a "convincing mosaic" of race discrimination.

put evidence in the record showing "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). It is undisputed that Plaintiff's termination constitutes an adverse action. Plaintiff's claim, however, fails as a matter of law because she did not engage in protected activity.

Plaintiff's retaliation claim is premised on the "opposition clause" of Title VII's anti-retaliation provision, which "prohibits retaliation when an employee 'opposes any practice made an unlawful employment practice by Title VII.'" Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010) (quoting 42 U.S.C. § 2000e-3(a)). When an employee opposes an employer's unlawful employment practice, she engages in protected activity. Id.; 42 U.S.C. § 2000e-3(a). Because it is unclear if Plaintiff engaged in protected activity, the Court begins by examining potential instances of opposition to an unlawful employment practice.

2. Potential Instances of Opposition

Plaintiff states she "complained of 'discrimination' directly to . . . Kim Elle, Amy Palowitch[,] and Jill Schepp." (Pl.'s Resp. Opp'n Def.'s Mot. for Summ. J., at 10.) The alleged complaints occurred at meetings on November 9, 2015, and December 21, 2015. (Id.) In brief, Plaintiff fails to elaborate what actions she

18

complained of, the adverse employment effects of those actions, or how those actions were motivated by race. Plaintiff states only that because "both were verbal complaints," they "indeed fall under protected activity." (Id. at 10-11.)

A verbal complaint is protected activity only when its substance opposes employment practices made unlawful by Title VII. Howard, 605 F.3d at 1244. Therefore, it is irrelevant to Plaintiff's retaliation claim that she complained she was treated differently because she raised concerns about the organization's finances, vocalized her feeling that she was being pushed out because Ms. Palowitch and Ms. Schepp were good friends, or pressed charges after her termination. (Pl.'s Resp. Opp'n Def.'s Mot. for Summ. J., at 12.) Similarly, Plaintiff conclusively stating in brief that she complained about discrimination is insufficient to establish a prima facie case of retaliation, especially in this case where Plaintiff repeatedly uses "discrimination" to refer to perceived unfair treatment not based on her race.

Sifting through Plaintiff's deposition, the Court finds two situations where Plaintiff mentions differential treatment because of race. First, during the November 9, 2015 meeting Plaintiff told Ms. Elle:

> [I]f I would have interacted with Amy, who is a white woman, the way she's doing with me, the way she did with me over the phone, the way she did with me through text messages, through voicemails and the way she was carrying on in this office right now, I would be

19

> immediately fired.  I'm not given — I would not have
> been given the same latitude to act out like that.

Second, during the December 21, 2015 meeting, Plaintiff complained to Ms. Schepp that she "was still being left out of meetings," "[t]here was virtually no communication," and she "was still being sent [Ms. Schepp and Ms. Palowitch's] work to do."  (Pl.'s Dep., at 183:15-25.)  In deposition, Plaintiff states she felt she was being treated differently because she was black.  Because Plaintiff is the non-movant and the facts are unclear, the Court assumes Plaintiff told Ms. Schepp her suspected reason for the differential treatment.  When asked for examples of how she was treated differently, Plaintiff provided only one example, which was that she was assisting in "prepping for [the] end-of-year reports" but was then removed from the project until later getting "pulled back in because they couldn't get it done on time."  (Id. at 184:5-22.) Plaintiff, more generally, then stated she told Ms. Schepp that she felt like she was "being treated like a slave" because she was "getting all of the . . . work dumped on [her]" but not getting the credit.

Now that the Court has uncovered two potential instances where Plaintiff complained she was treated differently because of her race, the Court analyzes whether Plaintiff's complaints amount to protected activity.

## 3. Protected Activity

To show engagement in a protected activity at the prima facie stage, "a plaintiff need not prove that the underlying discriminatory conduct that she opposed was actually unlawful." Knott, 624 F. App'x at 997. A plaintiff, however, only establishes a prima facie case "if [s]he shows that [s]he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997). As stressed by the Eleventh Circuit:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that [s]he *subjectively* (that is, in good faith) believed that h[er] employer was engaged in unlawful employment practices, but also that h[er] belief was *objectively* reasonable in light of the facts and record presented.

Id. (emphasis in original).

Even if Plaintiff subjectively believed she was discriminated against, her belief was not objectively reasonable because a race discrimination claim under Title VII requires (a) an adverse action (b) based on an employee's race. Maynard v. Bd. of Regents of the Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1288-89 (11th Cir. 2003).

a. *Adverse Employment Action*

Because discrimination requires an adverse employment action, opposition requires an objectively reasonable belief that the employer's conduct resulted in such an adverse action. If not, it cannot be objectively reasonable to believe the employer discriminated. "Not all employer actions that negatively impact an employee qualify as adverse employment actions. . . . Rather, only those employment actions that result in a serious and material change in the terms, conditions, or privileges of employment will suffice." Howard, 605 F.3d at 1245 (internal citations, quotation marks, and emphasis omitted). A material change includes "hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." Williams v. Ga. Stevedore Ass'n, No. CV411-284, 2014 WL 1319366, at *3 (S.D. Ga. Mar. 28, 2014) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). The key is whether there is evidence of some adverse effect on the employment status or benefits. Compare Akins v. Fulton Cty., 420 F.3d 1293, 1301 (11th Cir. 2005) (finding "unwarranted reprimands, a negative work evaluation, threat of job loss . . . , threat of suspension without pay, exclusion from meetings, [and] removal of job duties (followed by reprimands for not completing that work)," "[e]ven when considered in the aggregate," were not adverse), with Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455, 1456 (11th

22

Cir. 1998) (finding incorrectly listing employee as a no-show when not scheduled for work, suspending employee, soliciting negative comments about employee from coworkers, failing to schedule employee for work, and delaying authorization of medical treatment, collectively, were adverse because they would affect her compensation, employment status, and benefits). Actions that reasonably lead to consequences such as reduced pay, a smaller raise than the employee would otherwise receive, or suspension of incentives are generally considered materially adverse. Edwards v. Nat'l Vision, Inc., 568 F. App'x 854, 862 (11th Cir. 2014).

Plaintiff's first alleged opposition, in the November 9, 2015 meeting, can be viewed through two lenses — either Ms. Palowitch was not reprimanded because she was white or Ms. Palowitch was allowed to reprimand Plaintiff because Plaintiff was black. Either way, no evidence indicates that Ms. Palowitch's comments to Plaintiff resulted in any adverse effect on Plaintiff's employment. See Witt v. Franklin Cty. Bd. of Educ., No. 3:14-CV-01395-AKK, 2014 WL 7330862, at *3 (N.D. Ala. Dec. 19, 2014). Plaintiff's second alleged opposition was that she was left out of meetings, given the work of others, taken off projects, and not given credit for what she did. There is no evidence that these actions adversely affected Plaintiff's employment. Cf. Edwards, 568 F. App'x at 862 (finding being assigned "more patients than other employees," among other things, was not evidence that

23

employee "was materially and adversely affected; for example, she did not indicate that she suffered a decrease in salary."). Because there is no evidence allowing a reasonable person to believe Plaintiff's employment was adversely affected, Plaintiff's complaints do not amount to protected activity. As such, Plaintiff's retaliation claim fails as a matter of law.

### b. *Based on a Protected Class*

Even if it was reasonable for Plaintiff to believe she experienced an adverse employment action, it is not objectively reasonable for Plaintiff to believe such decisions were based on her race.[8] Plaintiff admits she has no evidence that she was treated differently because of her race.[9] (See, e.g., Pl.'s Dep., at 144:22-25.) When asked why Plaintiff felt she would have been treated differently if she had engaged in the same behavior as Ms. Palowitch, she said, "[T]hat's what I felt because . . . she

---

[8] Once within her brief Plaintiff states she complained to Ms. Schepp about the "hostile work environment." (Pl.'s Resp. Opp'n Def.'s Mot. for Summ. J., at 10.) Even if Plaintiff's complaints to her superiors could be considered complaints of a hostile work environment, she must still show that the unwelcomed conduct was based on Plaintiff's race. See Shockley v. Barbee, 747 F. App'x 754, 756–57 (11th Cir. 2018) (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1245, 1245 n.4 (11th Cir. 1999) (en banc)). For the same reasons discussed within this section, there is insufficient evidence in the record for an objectively reasonable person to find the unwelcomed conduct was a result of Plaintiff's race. Consequently, even if Plaintiff opposed what she subjectively believed was a hostile work environment, any opposition does not equate to protected activity.

[9] Throughout her deposition, Plaintiff also explains she believed Ms. Palowitch and Ms. Schepp were trying to push her out not because of her race, but because they "had become very good friends." (See, e.g., Pl.'s Dep., at 144:6-21.) Even if true, "favoritism, unfair treatment[,] and unwise business decisions do not violate Title VII unless based on a prohibited classification." Sherk v. Adesa Atlanta, LLC, 432 F. Supp. 2d 1358, 1370 (N.D. Ga. 2006) (quoting Taken v. Okla. Corp. Comm'n, 125 F.3d 1366, 1370 (10th Cir. 1997)).

started the meeting out telling me I was being full of drama."
(Id. at 161:3-16.) The only evidence Plaintiff offers in an attempt to show she was treated differently because of her race, then, is that Ms. Elle said Plaintiff was starting drama. Without more, this cannot support an objectively reasonable belief that Plaintiff was discriminated against because of her race. See Coutu v. Martin Cty. Bd. of Cty. Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995) (holding plaintiff did not engage in protected activity because he "made no allegation and offered no proof of race or national origin discrimination"); Diamond v. Morris, Manning & Martin, LLP, 457 F. App'x 844, 846 (11th Cir. 2012) (finding employee's belief she was discriminated against because of her race objectively unreasonable because employee offered no evidence that employees outside her race were treated differently). Consequently, Plaintiff's complaint of retaliation fails as a matter of law.[10] The Court grants Defendant's motion for summary judgment as to Plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the motion (Doc. 40) is **GRANTED**. Accordingly, the Clerk is directed to **ENTER JUDGMENT** in favor of

---

[10] Furthermore, because Plaintiff failed to oppose Defendant's statement of undisputed material facts, Plaintiff admits she was terminated because of her performance issues and not her alleged opposition. (Def.'s St. of Mat. Facts, ¶ 81); see also Diaz, 2009 WL 7226980, at *7.

Defendant on all of Plaintiff's claims, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this ___1st___ day of February, 2020.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA